## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| THE SETTLER, LLC | : | |
| Plaintiff, | : | Civil Action No. 3:26-cv-00822-VAB |
| v. | : | |
| BRIDGET URGO HOME LLC (F/K/A THE SETTLER HOME LLC), and BRIDGET URGO | : | |
| Defendants. | : | JUNE 10, 2026 |

## AMENDED COMPLAINT

In accordance with Rule 15(a)(1) of the Federal Rules of Civil Procedure, the plaintiff, The Settler, LLC ("The Settler") files its amended complaint as a matter of course against the defendants, Bridget Urgo Home LLC (f/k/a/ The Settler Home LLC) ("Urgo Home") and Bridget Urgo ("Urgo") (collectively, the "Defendants"), and alleges as follows:

## THE PARTIES

1.      The Settler was organized as a limited liability company under the laws of the State of Connecticut on or about April 2, 2003, and maintains a principal place of business located at 3 Thorndal Circle, Darien, Connecticut.

2.      Since 2002, The Settler has been a leading provider of moving and relocation management services.

3.      On or about September 10, 2023, The Settler hired Urgo as an employee and, as a condition of her employment, Urgo agreed to enter and did enter a written Confidentiality and Non-Competition Agreement with The Settler (the "Agreement").

4. On May 7, 2026, while still an employee of The Settler, Urgo organized The Settler Home as a limited liability company under the laws of the State of Connecticut with a principal place of business at 11 Silver Ridge Road, New Canaan, Connecticut.

5. Urgo identified herself as the Managing Member of The Settler Home and formed the company for the purpose of stealing clients and illegally competing with The Settler from her personal residence in New Canaan.

6. The Settler terminated Urgo's employment on May 15, 2026.

7. On May 21, 2026, Urgo amended the name of her limited liability company from "The Settler Home" to "Bridget Urgo Home," while continuing the company's purpose of stealing clients and illegally competing with The Settler.

## JURISDICTION

8. This is an action for Trademark Infringement and Unfair Competition under Sections 32 and 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1114 and 1125(a); for declaration of Copyright Ownership under the Copyright Act, 15 U.S.C. § 101 and § 201(b); for Copyright Infringement under 15 U.S.C. § 501; for Breach of Contract; for Breach of the Duty of Loyalty; for Civil Theft under C.G.S. § 52-564; for Conversion; for Computer Crimes under C.G.S. § 52-570b; and for Unfair Competition under C.G.S. § 42-110b.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and § 1338, including original jurisdiction for the claims arising under the Lanham Act and exclusive jurisdiction for the claims arising under the Copyright Act.

10. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal claims under Article III of the U.S. Constitution.

2

11.    Venue is proper under 28 U.S.C. § 1391 and § 1400.

## FACTUAL BACKGROUND

12.    In or about 2002, Esther "Pinny" Randall founded The Settler and first began using the name "The Settler" in commerce for moving and relocation services.

13.    In or about 2014, Pinny's daughter-in-law (Jackie Randall) began working for The Settler.

14.    On March 31, 2023, Pinny sold The Settler to Jackie Randall ("Randall").

15.    Around this time, Urgo owned and operated a separate business called B. Organized Home, which specialized in home organization.

16.    Given the nature of each business, The Settler and B. Organized Home collaborated on projects and shared clients.

17.    In early September 2023, Urgo joined The Settler as an employee and executed the Agreement.

18.    Randall and Urgo engaged in various discussions centered on Urgo "buying-into" The Settler business.

19.    Randall and Urgo could not agree on a "buy-in" price and other material terms.

20.    In late April 2026, Urgo ended the negotiations by rejecting the "buy-in" price allegedly because she had a different view of the value of the company.

21.    The "buy-in" price rejected by Urgo was based on her own advisor's valuation and far lower than Randall's advisor's valuation.

22.    As a result, it appears Urgo never intended to pay fair value for 50% ownership in The Settler and, instead, strung out the negotiations to give her sufficient time to take steps, detailed herein, to wrongly compete with and irreparably harm The Settler.

**FIRST COUNT** (Trademark Infringement)

23.     Paragraphs 1 through 22 are hereby incorporated as if fully stated herein.

24.     On April 2, 2013, the United States Patent and Trademark Office issued Trademark Registration No. 4,312,787 ("the '787 Registration"), which is a word mark for THE SETTLER, for use in connection with "Moving and relocation services, namely, planning and implementing moves of homes for others; Moving and relocation services, namely, planning and project oversight of home moving for others."

25.     A true and accurate copy of the Registration Certificate for the '787 Registration is attached as Exhibit A.

26.     The '787 Registration was renewed on October 1, 2023 and remains in full force and effect to this day.

27.     On or about May 7, 2026, Urgo adopted and began using "The Settler Home" and did so with the intention and purpose of trading on the reputation and goodwill of The Settler.

28.     A true and accurate Certificate of Organization for The Settler Home is attached hereto as Exhibit B.

29.     Urgo continues to use "settlerhome" as her contact information for her Facebook page.

30.     "The Settler Home" is a colorable imitation of the '787 Registration and its unauthorized use was designed to cause and is likely to cause confusion, mistake, or deception, among ordinary consumers regarding the source, sponsorship, affiliation, or approval of the goods and services.

4

31. In accordance with 15 U.S.C. § 1116, the Court should enjoin Urgo and Urgo Home, and anyone acting in concert with them, from further violating the rights of The Settler in the '787 Registration.

32. In addition, The Settler is entitled to recover damages against Urgo and Urgo Home under 15 U.S.C. § 1117, in the form of (1) the Defendants' profits, (2) the damages sustained to The Settler, and (3) the costs of the action.

33. Because of the intentional and egregious nature of the infringement, the Court should treble the damage award against each of them.

34. This is an exceptional case justifying an award of reasonable attorneys fees to The Settler.

**SECOND COUNT** (Unfair Competition under the Lanham Act)

35. Paragraphs 1 through 34 are hereby incorporated as if fully stated herein.

36. Since November 2023, The Settler has owned and used the domain name THESETTLERHOME.COM, as the address for its website.

37. Indeed, this website address was included as part of Urgo's signature block for her email communications while she was employed by The Settler.

38. A true and accurate copy of Urgo's email signature block while employed by The Settler is attached as Exhibit C.

39. On or about May 7, 2026, Urgo adopted and began using "The Settler Home" for her competing business and did so with the intention and purpose of trading on the reputation and goodwill of The Settler.

40. The adoption and use of "The Settler Home" was designed to cause and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection or association of

the Defendants with The Settler, and/or as to the origin, sponsorship, or approval of the Defendants' products and services by The Settler.

41. The Defendants' conduct constitutes false and/or misleading representations as to the source or sponsorship of the Defendants' products and services or a false designation of their origin, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

42. In accordance with 15 U.S.C. § 1116, the Court should enjoin Urgo and Urgo Home, and anyone acting in concert with them, from further violating Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

43. The Settler is also entitled to recover damages against Urgo and Urgo Home under 15 U.S.C. § 1117, in the form of (1) the Defendants' profits, (2) the damages sustained to The Settler, and (3) the costs of the action.

44. Because of the intentional and egregious nature of their unfair and deceptive acts, the Court should treble the damage award against each of them.

45. This is an exceptional case justifying an award of reasonable attorneys fees to The Settler.

**THIRD COUNT** (Copyright Ownership)

46. Paragraphs 1 through 45 are hereby incorporated as if fully stated herein.

47. From September 10, 2023 until May 15, 2026, Urgo was employed by The Settler and, within the scope of that employment, Urgo prepared and/or contributed to the preparation of certain works for The Settler.

48. Those works include, without limitation, marketing materials, project shots, organization systems, standard operating procedures, training videos, administrative documents, and the like.

49.     Urgo has wrongly declared ownership over all such works, which has created a *bona fide* despite over ownership in the works.

50.     Urgo also wrongly changed the name of The Settler's Instagram account and has thereby misappropriated the content and works of The Settler's Instagram account.

51.     This Court should declare that The Settler is the owner of all such works under the "Work Made for Hire" doctrine of the Copyright Act, 17 U.S.C. § 101 and § 201, and enjoin the Defendants from all unauthorized use of the works owned by The Settler.

**FOURTH COUNT** (Copyright Infringement)

52.     Paragraphs 1 through 51 are hereby incorporated as if fully stated herein.

53.     The Settler is the owner of Copyright Registration No. VA 2-505-982, entitled The Settler Social Media Photos, with an effective registration date of June 4, 2026.

54.     Defendants have copied, reproduced, distributed, published, and/or displayed the copyright protected works of The Settler in violation of 17 U.S.C. § 501, including The Settler's exclusive rights under 17 U.S.C. § 106.

55.     Defendants' infringement is knowing, willful and intentional.

56.     Defendants are liable to The Settler for either (1) actual damages and profits or (2) statutory damages provided in 17 U.S.C. § 504(c), including a sum of $150,000 for Urgo's willful misconduct.

**FIFTH COUNT** (Breach of Contract)

57.     Paragraphs 1 through 56 are hereby incorporated as if fully stated herein.

58.     As a condition of her employment, Urgo entered the Agreement with The Settler.

59.     A true and accurate copy of the Agreement is attached hereto as Exhibit D.

60.     In the Agreement, Urgo promised:

7

a.    To be a loyal employee of the company;

b.    To devote her best efforts to the performance of her duties for the company;

c.    To not ever use, disclose, disseminate, publish, divulge or otherwise make available any Confidential Information or Trade Secrets of the company;

d.    To not participate or be involved in any business that provides Residential Move Management Services during her employment and for twelve (12) months after termination of her employment with the company;

e.    To not communicate or contact any Client, prospect, or account with or for whom the company had performed Residential Move Management Services within one (1) year preceding her termination;

f.    To not solicit, recruit, induce or attempt to induce any current employee of the company, or any employee of the company at the time of her termination, to become an employee of an entity that provides Residential Move Management Services; and

g.    To return all company property immediately upon termination of her employment.

61.    Urgo has breached each and every one of these written promises by, *inter alia*, (1) taking steps to form a competing business while an employee of The Settler; (2) using Confidential Information and/or Trade Secrets of The Settler to form and operate a competing business, (3) becoming and being involved in a competing business as its Managing Member; (4) communicating and contacting Clients, prospects and accounts of The Settler; (5) soliciting and recruiting employees of The Settler; and (6) refusing to return all company property in her possession and control.

62.    In fact, Urgo went to the business location of The Settler under the false pretenses of wanting to retrieve her personal belongings, and while there, Urgo took company materials regarding on-going jobs.

63.     The wrongful conduct of the Defendants is ongoing, and, on a daily basis, is causing irreparable harm to The Settler for which there is no adequate remedy at law.

64.     The Court should enjoin Urgo, and all those acting in concert with her, from violating the Agreement in each manner detailed herein.

65.     Urgo's breaches have caused substantial economic harm to The Settler, entitling it to a recovery of damages.

66.     Urgo's wrongful acts, as detailed herein, reveal a reckless indifference to the rights, interests, reputation, goodwill and welfare of her former employer and the rule of law.

67.     Indeed, Urgo's acts demonstrate that she has put her own self-interests above those of The Settler.

68.     The Settler is thus entitled to an award of damages that properly, fairly and adequately compensates it for its losses, an award that properly, fairly and adequately disgorges Urgo of her ill-gotten gains, and an award of punitive or exemplary damages that properly, fairly and adequately punishes Urgo for her reckless and willful conduct.

**SIXTH COUNT** (Breach of Duty of Loyalty)

69.     Paragraphs 1 through 68 are hereby incorporated as if fully stated herein.

70.     As an employee, Urgo owed a duty of loyalty to The Settler, which obligated Urgo to act with the highest degree of good faith, loyalty and honesty toward The Settler.

71.     Urgo breached that duty of loyalty by, *inter alia,* not acting in the best interests of The Settler, organizing and operating a competing business, using company information, employees, and company clients and accounts to do so, and misappropriating company property.

72.     Urgo's breaches are causing irreparable harm to The Settler for which there is no adequate remedy at law.

9

73. The Court should enjoin Urgo, and all those acting in concert with her, from operating any competing business started during her employment with The Settler.

74. Urgo's breaches have caused substantial economic harm to The Settler, entitling it to a recovery of damages.

75. Urgo's wrongful acts reveal a reckless indifference to the rights, interests, reputation, goodwill and welfare of her former employer and the rule of law.

76. Indeed, Urgo's acts demonstrate that she has put her own self-interests above those of The Settler.

77. The Settler is thus entitled to an award of damages that properly, fairly and adequately compensates it for its losses, an award that properly, fairly and adequately disgorges Urgo of her ill-gotten gains, and an award of punitive or exemplary damages that properly, fairly and adequately punishes Urgo for her reckless and willful conduct.

**SEVENTH COUNT** (Civil Theft)

78. Paragraphs 1 through 77 are hereby incorporated as if fully stated herein.

79. Urgo has engaged in the following wrongful acts:

    a. Misappropriating funds of The Settler on two occasions in amounts of $18,000 and $6,600;

    b. Using the company credit for personal expenses, including dinners, food deliveries, workouts, and clothes;

    c. Changing the name of The Settler's Instagram account and, thereby, stealing the content and works of The Settler;

    d. Taking and maintaining possession of company property, including a computer, company binders, and client materials; and

    e. Returning to The Settler's office under false pretenses to take company materials.

80.    Each such act constitutes larceny by false pretenses and/or by false promises under Connecticut General Statutes § 53a-119(2) and § 53a-119(3), and/or larceny in the first degree under Connecticut General Statutes § 53a-122.

81.    As a result of Urgo's illegal acts, The Settler has been damaged and is entitled to an award of treble damages against pursuant to Connecticut General Statutes § 52-564.

**EIGHTH COUNT** (Conversion)

82.    Paragraphs 1 through 81 are hereby incorporated as if fully stated herein.

83.    Urgo's acts, at a minimum, constitute conversion.

84.    The Settler owned all such property, and without authorization, Urgo assumed and exercised possession, ownership and/or control of that property.

85.    Urgo's acts show a willful, wanton, malicious, and/or reckless indifference to the rights of The Settler and the rule of law.

86.    The Settler is thus entitled to an award of damages that properly, fairly and adequately compensates it for its losses, and an award of punitive or exemplary damage that properly, fairly and adequately punishes Urgo for her reckless and willful conduct.

**NINTH COUNT** (Computer Crimes)

87.    Paragraphs 1 through 86 are hereby incorporated as if fully stated herein.

88.    Urgo had no authority to access the computer system of The Settler except to support and advance the company's business.

89.    Urgo, however, gained unauthorized access and/or misused The Settler's computer system and computer data in violation of Connecticut General Statutes § 53a-251 (b) and/or (e), which crimes are civilly actionable pursuant to Connecticut General Statutes § 52-570b.

11

90.     These wrongful acts include: (1) exfiltrating classified company information concerning the valuation of The Settler business to her personal email; (2) downloading the company's QuickBooks files and directing those files to her personal advisors; and (3) accessing the company's banking transactions back to 2023.

91.     As a result of Urgo's unlawful conduct, The Settler has been harmed and is entitled to the recovery of damages in accordance with Connecticut General Statutes § 52-570b(c).

92.     Urgo's conduct was willful and malicious, entitling The Settler to the recovery of treble damages pursuant to Connecticut General Statutes § 52-570b(c).

93.     The Settler is aggrieved by Urgo's acts and is further entitled to an award of reasonable costs and reasonable attorney fees pursuant to Connecticut General Statutes § 52-570b(e).

**TENTH COUNT** (CUTPA)

94.     Paragraphs 1 through 93 are hereby incorporated as if fully stated herein.

95.     As detailed herein, the Defendants have engaged in unfair methods of competition and have committed unfair and deceptive acts in the conduct of trade and commerce, all in violation of Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b(a).

96.     The Settler has suffered an ascertainable loss as a result of the Defendants' wrongful conduct.

97.     As a result of the Defendants' conduct, The Settler has suffered, and will continue to suffer, substantial harm, entitling it to the recovery of damages, punitive damages, costs, attorneys' fees and injunctive relief under C.G.S. § 42-110g.

## PRAYER FOR RELIEF

WHEREFORE, The Settler respectfully requests that the Court enter preliminary orders and a final judgment as follows:

1.      Enjoin the Defendants' use of "The Settler Home" and any other confusingly similar mark.

2.      Award money damages, treble damages, and reasonable attorneys fees under 15 U.S.C. § 1117, for Defendants' violation of 15 U.S.C. § 1114 and/or § 1125.

3.      Declare The Settler to be the owner of the disputed works created during Urgo's employment with The Settler under the Copyright Act, 17 U.S.C. § 101 and § 201.

4.      Enjoin the Defendants from all unauthorized use of the works owned by The Settler, including the Instagram Account displaying and advertising jobs completed by The Settler.

5.      Awards damages under 17 U.S.C. § 504.

6.      Enjoin Urgo, and all those acting in concert with her, from violating the Agreement, including by restraining Urgo from:

   a.      Participating in any business that provides residential move management services for a period of twelve months;

   b.      Communicating with or contacting any client, prospect, or account with or for whom The Settler had performed residential move management services within one year of May 15, 2026;

   c.      Soliciting, recruiting, inducing or attempting to induce any current employee of The Settler, or any employee at the time of her termination, to

13

become an employee of an entity that provides residential move management services;

d.    Using, disclosing, disseminating, publishing, divulging or otherwise making available any Confidential Information and/or Trade Secrets of The Settler.

7.    Award money damages and punitive damages for Urgo's breach of the Agreement.

8.    Award money damages and punitive damages for Urgo's breach of the duty of loyalty owed to The Settler.

9.    Enjoin Urgo, and all those acting in concert with her, from operating any competing business that was started while she was an employee of The Settler, including Urgo Home.

10.    Award treble damages for Urgo's violation of C.C.S. § 52-564.

11.    Award money and punitive damages for Urgo's conversion of The Settler's property.

12.    Award money damages, treble damages, costs, and reasonable attorney fees under C.G.S. § 52-570b.

13.    Award damages, punitive damages, costs, and attorneys' fees under C.G.S. § 42-110g.

PLAINTIFF, THE SETTLER, LLC

*/s/ John R. Horvack, Jr.*
John R. Horvack, Jr.
Fed. Bar ct12926
Fatima Lahnin
Fed. Bar ct24096
CARMODY TORRANCE SANDAK &
HENNESSEY LLP
195 Church Street, 18th Floor
P.O. Box 1950
New Haven, CT 06509-1950
Tel: 203-777-5501
Fax: 203-784-3199
jhorvackjr@carmodylaw.com
flahnin@carmodylaw.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2026 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ John R. Horvack, Jr.
John R. Horvack, Jr.